# Baltimore & Ohio Railroad Company *v.* Samuel, Appellant.

*Railroads—Demurrage—Common carriers—Consignee's refusal to accept—Notice to consignor.*

Where a consignor has notice that a consignee had refused to accept car loads of goods and directs the carrier to reship them with direction to "allow all charges to follow" and the second consignee also refuses to accept cars, the consignor will be liable for the carrier's proper charges for freight and demurrage.

Argued Oct. 4, 1911. Appeal, No. 278, Oct. T., 1910, by defendant, from order of C. P. No. 5, Phila. Co., Sept. Term, 1910, No. 1,112, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Baltimore & Ohio Railroad Company v. Frank˙ Samuel and Silas M. Tomlinson, trading as Frank Samuel. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Assumpsit to recover freight and demurrage charges.

Rule for judgment for want of a sufficient affidavit of defense.

The facts are stated in the opinion of the Superior Court.

The court made absolute rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was the order of the court.

*Lewis Lawrence Smith,* for appellants.—Primarily the delivery of the material to the railroad company vests the title in the consignee: Miller v. Seaman, 176 Pa. 291; Rickey v. Tutelman, 19 Pa. Superior Ct. 403; Werner Saw Mill Co. v. Ferree, 201 Pa. 405; Mull v. R. R. Co., 38 Pa. Superior Ct. 416.

The defendants had, therefore, no duty to perform until they received notice from the railroad company of the rejection of the cars.

*William B. Linn,* for appellee, cited: Leh v. R. R. Co., 30
Pa. Superior Ct. 396.

OPINION BY ORLADY, J., November 13, 1911:

The defendant delivered to the Philadelphia & Reading
R. R. Company at Port Richmond, Philadelphia, three car
loads of light scrap iron and consigned them to the Milton
Manufacturing Company at Milton, Pennsylvania. The
cars arrived in due time at their destination and in each
instance the carrying company, by telephone and mail
service, notified the consignee on the day of each car's ar-
rival. Notice by letter was promptly given by the con-
signee to the carrier that the freight would not be accepted
on account of its quality. This refusal to receive the
freight was communicated by the carrier to the defendant
within twenty-four hours of receipt of the notice, accom-
panied with a request for disposition of the cars.

On January 12, 1910, the defendant by letter notified
the agent of the railroad company at Milton, to reconsign
the cars to Morris Weil & Son, Camden Street Station,
Baltimore, Maryland, via Baltimore & Ohio Railroad
Company. "Please allow all charges to follow" and to
send to the consignor a bill of lading for the same. In ac-
cordance with this direction, the cars were reconsigned
with instructions that all freight and demurrage charges
should be paid by the consignee. A written notice was
given to these consignees on arrival at destination of each
car and they refused to accept any of them, but directed
that the plaintiff should deliver the cars and their contents
to the defendants. This notice was transmitted promptly,
and the defendants refused to accept the freight.

After due proceedings had by notice to parties and under
statutory authority of the state of Maryland, the plaintiff
sold the contents of cars for the sum of $175, which was
credited on account of freight and demurrage charges ac-
crued thereon, which then amounted to $186, leaving a
balance due of $11.00, in addition to which the plaintiff
claims to recover in this action the sum of $239 as demur-

rage charges, with interest thereon. The demurrage being calculated in accordance with the tariff schedules— filed by each of said carriers with the Interstate Commerce Commission, copies of the rules and schedules being attached to the plaintiff's statement.

The affidavit of defense admits all the averments in the plaintiff's statement of claim with respect to the shipment and reshipment of the cars, and that the amount of the freight claim as well as the demurrage charges at Milton of $102 is correct, but contends in their affidavit of defense that they are not liable for any demurrage claimed to have accrued at Baltimore, and that the sale of the property there was illegal—in violation of the defendants' rights—and that the plaintiff is liable to the defendants for the fair market value of the freight when it was sold, which was averred to be $343.67.

The court made absolute the rule for judgment for want of a sufficient affidavit for the amount of the claim. We may adopt the argument of counsel for the defense, in that primarily the delivery of freight to a carrier vested the title thereto in the consignee: Miller v. Seaman, 176 Pa. 291; Rickey v. Tutlelman, 19 Pa. Superior Ct. 403; Mull v. R. R. Co., 38 Pa. Superior Ct. 416; Werner Saw Mill Co. v. Ferree, 201 Pa. 405, but we cannot agree that after freight has been regularly delivered to a carrier for shipment to a designated consignee that there is any duty on the carrier to notify the consignor of the consignee's refusal to receive the freight before the carrier can hold the property liable for legal freight and demurrage charges. This case, however, is relieved of all doubt by the defendants' directions to the carrier to reconsign the freight—allowing all charges to follow.

Each consignee was duly notified of the arrival of the freight, and each refused to receive it. The consignor had due notice of the condition of affairs at Milton before he gave express directions for reshipment of the freight to Baltimore, and apart from this specific order the last carrier was entitled to collect all the proper charges subject

to which he received the shipment: Wabash R. R. Co. v. Pearce, 192 U. S. 179. It is not contended that the demurrage charges are in violation of the rules controlling them.

The judgment is affirmed.