Pennsylvania Railroad Company *v.* Rothstein et al., Appellants.

Argued October 17, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Edmund W. Kirby*, of *Morris & Kirby*, for appellants.

*Theodore Voorhees*, of *Barnes, Biddle & Myers*, for appellee.

OPINION BY CUNNINGHAM, J., February 1, 1935:

This is a suit by the plaintiff railroad to recover for unpaid freight charges on a carload of lettuce. The appeal is from the action of the court below holding the affidavit of defense insufficient as a matter of law.

The lettuce was shipped by Western Vegetable Distributors from Arizona on April 5, 1930, consigned to its own order. On April 6th it was ordered diverted to the defendants, in Philadelphia. The following day defendants wrote plaintiff that they were agents only with respect to this carload, and that the beneficial owner was Western Vegetable Distributors. The shipment arrived in Philadelphia on April 12th, and on the 16th defendants, in turn, ordered it diverted to a New York concern by the following diversion order:

"Form 2-5M 4829

DIVERSION ORDER
H. Rothstein & Son,
Philadelphia, Pa.

Mr. Schust                                   4-16-30
Mr. C. N. Allen
                (telegram)*   Agent Penna. R. R.
Confirming our telephone of 3:55 P. M. today Car

---
*Stricken out in original of message.

11291 Initial PFE From ...... Date ......19......
Now Track Consigned to H. Rothstein & Son, Phila.
Divert, Protecting Through Rate, to L. Casazza Pier
No. 29.
City New York State of N. Y. Route via ......R. R.
Special Instructions ............................
                    Yours truly,
Lot No. 13722              H. Rothstein & Son."
                         Per GL:

The ultimate consignee refused to accept delivery
of the shipment, and the railroad company dumped
it because it had become unfit for human consumption.

This case is almost identical on its facts with our
earlier case of Pa. Railroad v. Rothstein & Sons, 109
Pa. Superior Ct. 96, 165 A. 752, a case between the
same parties and also dealing, inter alia, with the
legal effect to be given to a similar diversion or recon-
signment order. In that case, the defendants had also
diverted the shipment in their own name, without dis-
closing therein that they were acting for another.
Prior to the reconsignment, plaintiff had received a
letter from defendants stating that they were agents
only and had no beneficial interest in the shipment,
but not disclosing the name of their principal, and had
also received another letter from a third party giving
the name of the alleged beneficial owner as of the date
of the letter. We there held that the reconsignment
order, signed by defendants as principals, imposed
liability upon them for all freight charges, and this
despite the allegations of notice of agency. In that
connection, we said:

"By their written order of June 27, 1928, they di-
rected plaintiff to deliver this carload to Burton &
Briel, in Richmond, Va. Under our decisions, this
was such an exercise of dominion over it as rendered
them liable for the tariff charges: W. J. & Seashore

R. R. Co. v. Whiting Lumber Co., 71 Pa. Superior Ct. 161, 164; P. & R. Rwy. Co. v. International Motor Co., 84 Pa. Superior Ct. 582, 587; P. & R. Rwy. Co. v. Taylor et al., 102 Pa. Superior Ct. 31. The notice of June 22, 1928, stating that defendants were agents only, is of no effect to vary their liability under the order of reconsignment, and the notice from the Fry Brokerage Company is equally ineffective. In the reconsignment order they purported to act as principals in exercising dominion over the shipment, and they should be bound by their action in so doing. A similar situation arose in Delaware, Lackawanna & Western R. R. Co. v. Andrews Bros. Co., 90 Pa. Superior Ct. 574. In that case the defendant also directed the carrier to reconsign the freight. In an action for the freight charges, the defendant pleaded that the railroad was orally notified that defendant was acting as agent for the Peppers Fruit Company, and also that the Peppers Fruit Company had notified the railroad by letter that the defendant was their authorized representative. It was held that these allegations were insufficient to relieve from liability for the charges. In the course of the opinion, this court said:

" 'Neither the letter of the Peppers Fruit Company written to the Pennsylvania Railroad Company in 1921, nor the fact that appellant's business is that of a commission broker or agent, is inconsistent with appellant's becoming the owner of a car shipped by the Peppers Fruit Company; neither would prevent the appellant from dealing with a carrier as principal if it chose to do so, and so far as this record discloses, that is exactly what appellant did by its written order. The delivery of that order was, for all that appears properly pleaded in the affidavit of defense and amendments, such exercise of ownership or of the right to dispose of the car as to impose on appellant liability for the transportation charges: R. R. Co. v. Whiting

Lumber Co., 71 Pa. Superior Ct. 161; R. R. Co. v. Warren Ross Co., 234 N. Y. 261.' "

That ruling is controlling in the present case. Here, also, defendants ordered the shipment diverted in their own name, and therefore should be held liable, as principals, for the legal obligations involved in making such an order. The only effort made to distinguish our prior decision is based upon the fact that in the present case the *notice* of April 7, 1930, not only recited that defendants were agents, but also affirmatively stated the name and address of their principal. This contention, however, misconstrues the effect of our former decision. It was based upon the express ground that agency was not properly disclosed in the *reconsignment order*—not that the defendants had failed to disclose the name of their principal in their prior communication. The diversion (or reconsignment) order is the only document which requires legal construction. Such an order, when acted upon by the carrier, constitutes a binding contract between the carrier and the one giving the order. See C. & N. Rwy. Co. v. Picard et al., 98 Pa. Superior Ct. 134, 136, and the cases cited in the above quotation. Since the order constitutes a contract, the party giving it binds himself to the payment of unpaid freight charges unless he has made it clear that he is acting for another. Responsibility is not avoided, however, by a disclosure of agency in prior communications. It must appear from the face of the contract itself. In the case of Horwath et al. v. Simon, 95 Pa. Superior Ct. 410, defendant had entered into a written contract for services to be rendered plaintiffs. He admitted the contract, but asserted that while he had signed it in his own name he had been acting for a principal known to the plaintiffs, and that the plaintiffs had agreed to hold the principal only. This defense was held insufficient. It was there said, at page 414: "A person

contracting as agent will be personally liable, whether he is known to be agent or not, in all cases where he makes the contract in his own name or voluntarily incurs a personal responsibility either expressed or implied.''

It is therefore immaterial that one party to a contract may have knowledge that the other party is acting as agent if the latter in signing the contract purports to act as principal. That this is not only good law but also common sense is apparent from the fact that, as pointed out in our earlier case, it would be quite possible for the title to the shipment to change hands several times in the interim between the notice of agency and the giving of the diversion or reconsignment order.

Defendants place great stress upon the statement in our earlier decision to the effect that, ''Even had the reconsignment order been coupled with the notice of agency [which did not name the principal], this would also have been ineffective to prevent judgment. It is an elemental principle of agency that to relieve himself from liability, an agent in dealing with a third party must not only disclose the fact of the agency, but also the name of his principal.'' It is argued that if the notice in that case had named the principal, our conclusion would have been different. This suggestion, however, ignores the fact that we were there writing about the reconsignment order itself—not about the earlier notice of agency.

In order to crystallize the rulings of our earlier cases, we now state the definite rule that a diversion or reconsignment order obligates the one signing it for the payment of freight charges, unless he states, in the order itself, not only the fact that he is acting as agent for another, but also the name of his principal. When this is done, the carrier will know for whom it is acting and so be able to determine whether it is

willing to undertake the contract. For the reasons stated, we agree with the court below in holding the affidavit of defense insufficient.

Judgment affirmed.